IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Rosemary M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 21-cv-50446 |
| v. | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Carolyn Colvin, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rosemary M., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On June 12, 2015, Rosemary M. ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits. She also filed a Title XVI application for supplemental security income. R. 28. Her applications were denied initially, upon reconsideration, and by decision of Administrative Law Judge ("ALJ") dated February 28, 2018. R. 28-39. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-4. Plaintiff sought judicial review and then-Magistrate Judge Johnston remanded the decision to the Appeals Council. R. 1056-1057. The Appeals Council then remanded the case to the Commissioner of Social Security for further administrative proceedings. R. 1062-1065.

On remand, ALJ Lee Lewin held a telephonic hearing on January 21, 2021. R. 865. Plaintiff, represented by counsel, appeared and testified. *Id*. Cheryl R. Buechner, Ph.D., an impartial medical expert, and Michael Stern, an impartial vocational expert ("VE"), also appeared and testified. *Id*. The ALJ held a supplemental hearing on June 22, 2021, to allow Plaintiff's counsel to further question the VE. *Id*. On June 30, 2021, the ALJ issued a written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 865-879. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c);

---

[1] Carolyn Colvin has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

1

[8]. Now before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision [12], Defendant's motion for summary judgment [15], and Plaintiff's reply brief [16].

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of April 15, 2015. R. 868. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety; depression; post-traumatic stress disorder; cervical spondylosis; diabetes mellitus; and obesity. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 868-871.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: occasionally climb ladders, ropes or scaffolds and stoop; frequently kneel, crouch, crawl, balance, and climb ramps or stairs; can understand remember and carry out instructions for simple routine repetitive tasks with sufficient persistence concentration or pace to timely and appropriately complete such tasks; occasional brief and superficial interaction with coworkers and supervisors away from the general public; with work that does not require changing tasks from day to day, but rather has a fairly regular set of job duties and expectations; can make simple work related decisions and adapt to routine work place changes; and no fast paced production rate or strict quota requirements, but can meet end of day requirements. R. 871-877. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 877. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 877-878. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from April 15, 2015, through the date of decision, June 30, 2021. R. 879.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues that the ALJ's step 5 finding was not supported by substantial evidence because the ALJ relied on the VE's testimony without ensuring the reliability of his methodology and without investigating conflicts between his testimony and occupational information in the Dictionary of Occupational Titles ("DOT"). Plaintiff also claims that the ALJ did not adequately address her post-hearing objections and erred in evaluating her subjective symptoms. As detailed below, the Court finds that the ALJ's analysis of the VE's testimony was supported by substantial evidence, that the ALJ adequately addressed Plaintiff's post-hearing objections, and that the ALJ properly evaluated Plaintiff's subjective symptoms.

At step 5, the Social Security Administration "bears the burden of showing that a significant number of other jobs are available to the claimant." *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020). At this step, ALJs often rely on VEs to estimate the number of jobs that exist in significant numbers in the national economy for an individual with the claimant's experience and limitations. 20 C.F.R. § 416.966(e). The substantial evidence standard requires ALJs to "ensure that the approximation is the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). When a claimant challenges a VE's estimate, ALJs "must require the VE to offer a reasoned and principled explanation" of the method used to produce the estimate. *Id*. at 970.

In this case, Plaintiff claims that the VE's explanation of the method he used for producing the job-number estimates was insufficient to satisfy the substantial evidence standard. The ALJ and counsel for Plaintiff both questioned the VE about his methodology at the original hearing on January 21, 2021, and at the supplemental hearing on June 22, 2021. R. 991-1016, 891-925. The VE testified that he used SkillTRAN's Job Browser Pro program to estimate the number of available jobs in the national economy for an individual with Plaintiff's experience and limitations. R. 992. The VE also provided a brief explanation of the Job Browser Pro program's methodology. R. 904-924, 995-1003. He stated that the program compiles its job numbers from sources including the Occupational Employment Survey ("OES") from the Bureau of Labor Statistics. R. 904-905. He explained that the program then divides the total estimated jobs in the OES categories into relevant North American Industrial Classification System ("NAICS") industries and then into the DOT codes. R. 905, 912-914, 995, 1002. He testified that he reviewed the program's estimates and modified the Job Browser Pro program's estimate for one occupation to account for Plaintiff's limitations based on his professional experience and understanding of the job. R. 923, 993, 1001-1002, 1010-1011. Although the VE could have provided a more detailed explanation of the program's methodology, the ALJ was entitled to find that the VE's use of the SkillTRAN software, combined with his professional experience, produced sufficiently reliable estimates.[2] *Case v.*

---

[2] Contrary to Plaintiff's claims, the VE did provide his job-number estimates by DOT code. R. 989, 911-

3

*Kijakazi*, No. 22 CV 2379, 2023 WL 4882880, at *3 (7th Cir. Aug. 1, 2023) ("The inability of the vocational expert to precisely explain the software's algorithms does not render his explanation unreliable.").

Plaintiff also argues that the VE's testimony conflicted with the DOT's occupational information. At the time of the ALJ's decision, ALJs had an "affirmative responsibility" to ask whether a VE's evidence "conflicts with information provided in the DOT" before relying on that evidence. SSR 00-4p.[3] If there was an "apparent unresolved conflict," ALJs needed to "elicit a reasonable explanation for the conflict." *Id*. In this case, the ALJ did ask, and the VE confirmed, that "all of [the VE's] testimony [was] consistent with the Dictionary of Occupational Titles and its companion volumes." R. 990. Plaintiff claims that there was an apparent conflict between the VE's testimony that Plaintiff could perform the three representative occupations he identified and the fact that the jobs require working at a set pace, as a member of a team, and servicing clients. However, the VE testified that the DOT descriptions of the representative occupations do not address production rate pace, nor do they indicate the level of interaction required with the public, coworkers, and supervisors. R. 1010, 1317-1323. Plaintiff does not identify any information from the DOT supporting her contention that the three representative occupations have these requirements. Given the VE's testimony, there were no apparent unresolved conflicts for the ALJ to investigate.[4]

As for Plaintiff's claim that she is unable to perform any of the representative occupations the VE identified due to her inability to satisfy the jobs' training requirements, that argument is waived. The VE testified that Plaintiff, with her age, education, work history, and RFC could perform the three representative occupations he identified. R. 988-989. He never mentioned the training requirements, if any, for the occupations. Plaintiff did not ask the VE about the training requirements for any job at either of the hearings or in any of the 32 interrogatories she posed to the VE after the first hearing. R. 1311-1314. She also did not raise this issue in her post-hearing objections. R. 1434-1437. While a claimant cannot waive the substantial evidence standard, "a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court

---

914. The VE also did not rely on the "equal distribution method" which the Seventh Circuit has criticized. *Chavez*, 895 F.3d at 967. As the VE explained, the Job Browser Pro program is not an equal distribution method. R. 913, 924, 1002. *See Chavez*, 895 F.3d at 966 (noting that the VE used "equal distribution method" as opposed to "occupational density method, which approximates job numbers utilizing a software program known as Job Browser Pro."). Finally, Plaintiff cites *Forsythe v. Colvin* for the proposition that the VE's use of round numbers indicated that the estimates were unreliable "guesses." 813 F.3d 677, 680 (7th Cir. 2016). However, unlike the VE in *Forsythe* who made "no effort" to explain where he had come up with his numbers, the VE in this case clearly explained that his job estimates were sourced from the Job Browser Pro program and his professional experience. R. 992.

[3] The Court notes that the Social Security Administration rescinded SSR 00-04p on January 6, 2025, replacing it with SSR 24-3p.

[4] Even though there were no conflicts with the occupational information provided in the DOT, the VE reduced the number of available jobs for the merchandise marker position because, based on a "combination of [his] experience, [his] knowledge, [his] understanding of the job, [and his] having had clients work in those jobs," he determined that some merchandise marker positions require "some incidental public contact some of the time," which would conflict with Plaintiff's limitations. R. 1010-1011.

after the closure of the administrative record." *Leisgang v. Kijakazi*, 72 F. 4th 216, 220 (7th Cir. 2023). Even if the argument were not waived, Plaintiff presents no evidence on appeal that these three representative occupations require training that Plaintiff is unable to perform and given the lack of any testimony or questions pertaining to training requirements, this Court cannot find that the ALJ erred in failing to consider any such requirements. *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[T]he VE's testimony was both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony.").

Plaintiff also argues that the ALJ erred by failing to address her post-hearing memorandum which contested the reliability of the VE's job-number estimates and the Specific Vocational Preparation ("SVP") level of all three representative occupations identified by the VE. In her written decision, the ALJ did acknowledge Plaintiff's objection to the VE's job-number estimates. R. 878. The ALJ overruled that objection, finding that the VE "explained his methodology for how he analyzed the information and derived his conclusions for the job estimates that he provided," and concluded that the VE's explanation was "thorough and well-reasoned." *Id*. While the ALJ did not explicitly address Plaintiff's objection to the SVP levels, she did find that each of the three representative occupations were SVP 2. *Id*. This conclusion was supported by substantial evidence in the record. The VE testified that the three representative occupations had SVP levels of 2 as consistent with the occupational information in the DOT. R. 989-991. Although Plaintiff objected to this testimony in her post-hearing memorandum, arguing that the O*NET classifies the SVP levels of those occupations between 4 and 6, the ALJ was not required to use the O*NET classifications in her decision. Additionally, as the VE testified in his interrogatory responses, the O*NET does not identify SVP levels for individual DOT occupations, but provides SVP levels generally, for a group of jobs. R. 1315-1316. The ALJ was entitled to rely on the VE's testimony that the DOT classified the three representative occupations as SVP 2. R. 1430. *See Moran v. Astrue*, No. 12CV28, 2013 WL 359657, at *13 (N.D. Ind. Jan. 30, 2013) ("Provided there is no apparent conflict between the VE's testimony and the DOT, the ALJ may rely on the VE's confirmation that the testimony is consistent with the DOT."). This Court will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Finally, Plaintiff claims that the ALJ erred in evaluating Plaintiff's subjective symptoms. ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. In this case, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with evidence in the record because the alleged severity of her symptoms was "not supported by the objective medical findings." R. 872. The ALJ also noted that Plaintiff's "treatment has been routine, conservative and beneficial, although there have been significant gaps in treatment during the relevant period" and that Plaintiff has engaged in "drug seeking and other activities inconsistent with the alleged severity" of her symptoms. *Id*.

5

As to this issue, Plaintiff argues first that her agoraphobia was responsible for any treatment gaps in the record. However, the ALJ addressed this argument, stating "[t]he claimant testified that she did not continue psychiatric treatment because of her agoraphobia, but she has not looked into phone therapy or other modes even though tele-visits are common and frequent during the current COVID-19 pandemic." R. 872, 984. Plaintiff also contends that the ALJ erred in relying on Plaintiff's drug-seeking behavior. However, as the ALJ noted, at least one medical provider denied Plaintiff narcotics/controlled substances due to drug-seeking behavior. R. 468, 872. ALJs can discount the testimony of a claimant who engaged in drug-seeking behavior. *See Schmoock v. Kijakazi*, No. 22 CV 775, 2023 WL 3560612, at *5 (E.D. Wisc. May 19, 2023) ("[D]rug-seeking behavior is relevant . . . because it undermines [the claimant's] credibility overall."). Plaintiff also argues that the ALJ erred by finding Plaintiff's cooperative demeanor at medical appointments inconsistent with her symptoms. The ALJ did not completely discount Plaintiff's "irritability/anger." R. 869, 872. Although the ALJ noted that Plaintiff had appropriate interactions with providers and there was "no consistent acting out," the ALJ accounted for difficulty maintaining social functioning in Plaintiff's RFC. R. 869, 871-872. Finally, the ALJ acknowledged that Plaintiff reported limited daily activities but found that factor "outweighed by the other factors" discussed in the decision. R. 873. In support of her evaluation of Plaintiff's subjective symptoms, the ALJ cited to Plaintiff's medical records and the opinions of medical experts, giving great weight to the independent medical expert who testified at the hearing and significant weight to state agency psychological consultants. R. 875-877. Ultimately, Plaintiff "has not shown that the ALJ's evaluation of [her] symptoms" was "patently wrong." *Michelle V. v. Kijakazi*, No. 21 CV 5979, 2023 WL 2390541, at *3 (N.D. Ill. March 7, 2023) (quoting *Horr v. Berryhill*, 743 Fed Appx. 16, 19-20 (7th Cir. 2018)).

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date: January 21, 2025          ENTER:

_Margaret J. Schneider_
United States Magistrate Judge